Excuse me, we're going to come down and greet you before we allow you to escape. Alright, thank you. Ms. Pratt, we'd be happy to hear from you in the United States v. Smith. Thank you, Your Honor. Are you able to hear me alright? Can you hear me? Maybe you want to lower it just a little bit, and that's perfect. Okay, thank you. Good morning, Your Honors. I'm Fran Pratt on behalf of Robert Smith. May it please the Court, this case presents two closely intertwined issues. Whether Robert Smith entered a knowing, intelligent, and voluntary plea, guilty plea, and whether the district court wrongly denied Mr. Smith's motion to withdraw that plea. The issues are intertwined because the validity of the plea in the first instance is a major factor in withdrawing the plea. And because Mr. Smith's original trial attorney, who was in disbarment proceedings, was ineffective in his representation both before and after the plea. So, Ms. Pratt, can I skip? I have a remedial question that I don't want to forget to ask, and once we get into that, it's going to be. Given that your client has completed his term of imprisonment, so we let him withdraw his guilty plea, I'm just trying to figure out what's going to happen. Let's assume, not counterfactually, let's assume that we agree with you on these issues. He's going to agree to a time-served plea, right? That seems overwhelmingly likely what's going to happen if we do that. I think it's not clear that I think would probably be our advice. Because if he doesn't do that, they can re-prosecute him, and this super-favorable plea agreement he got goes out the window, right? I don't envy the task of the federal public defender who would have to explain to him, like, so, good news, we won the appeal, and you can withdraw the guilty plea. Bad news, that super, super, super favorable plea deal you got is out the window, and the government can now throw the book at you, and you might be way, way, way longer incarcerated as a result. Your Honor, there have been cases where defendants have gone back for basically to start proceedings over. I guess I'm not going to ask you, but if I was a lawyer representing such a defendant, I would say you would be insane to withdraw your guilty plea under these circumstances. You've already served all of your prison time. I would not disagree with that, Your Honor. So then what is the evidence that he would have, that he would not have pled guilty otherwise? If I could just, I will answer that question, but I notice the clock is not moving. So I don't want to, I think because of the issues about making sure you could hear me, so I want to. It started and then it stopped. Yeah. So I don't want to overstay my time. The evidence is at the evidentiary hearing. Mr. Smith stated very clearly, and this is at JA page 224, quote, I was resistant to pleading guilty from the very beginning because I paid him, his attorney, to go to trial. I didn't pay him my hard-earned money to take a plea, and the only reason I took it is because he wasn't prepared to go to trial. That's, I think, a very clear statement. What took him so long to come to that conclusion? He ended up talking to other lawyers after because, after the plea, because he grew more and more dissatisfied with what his first attorney did. It was at that point he discovered both that the statement of facts that he thought he signed was not, in fact, the one that was filed. It's also at that point that he learned that his previous attorney had just been recommended for disbarment in the District of Columbia. Was there any material difference in the statement of facts that was filed and the one that appellant saw? Your Honor, I have gone through, and I think the government says it's mostly stylistic. I think that there is one point where, near the beginning, where it was the statement of the second one was, I think, more clearly drafted and easier to follow. We have the Nicholson and Moore cases, with which you're familiar, and they dealt respectively with periods of six weeks and two months before the motion to withdraw was made. In both cases, the court said, well, that six-week period and that two-month period, that's too long. And here you have a much longer period, from July 25th of 2023 to February 9th of 24, when the motion to withdraw was made. And you say, well, that's mitigated by the fact that he was appointed new counsel in November. But at the same time, even if the period is from November to February, that's still longer than the periods in Nicholson and Moore that were ruled too long. And so even accounting for the appointment of new counsel, how do we overlook the period of time? Because what you're worried about is that if there's a problem with this or you feel coerced or something, that that would come to you normally within a relatively short period of time. And what we don't want is somebody just sitting in prison and having a case of buyer's remorse over time and saying, well, I think I could have gotten a better deal. So how do we deal with the length of time between the motion to withdraw and the plea itself? Your Honor, the Moore factors include the amount of time as simply one factor, and it is a balancing test among all of the factors so that. Well, it may be just one factor, but there are a number of other factors to consider here. And one of those was prejudice to the government. And this plea was entered right on the day of trial or the day before trial, which goes to the question of the prejudice to the government here. And the government would have assembled its witnesses and maybe jury selection would have proceeded, but the witnesses were there. They were told to be there and everything. And then at the very last minute, a plea is entered, which is fine. But then when you later want to withdraw and you look at the fact that this plea was entered immediately before trial, and asking the government to reassemble the witnesses at a time when their recollection is a bit fuzzier than it was at the time, there would be prejudice to the government in this situation, would there not? Because you're right about the fact that the length of the delay is one of the factors, and it's not the only one. But then when you go through some of the others, the prejudice to the government, that would be here when the plea comes in at the 11th hour, would it not? It can be viewed that way, Your Honor. However, it is not, two points, it's not at all unusual for pleas to happen at the last minute like this. Furthermore, the government itself admitted, and this is at JA pages 34 and 35, the government admitted that this is not and has never been a complex or voluminous trial. In fact, they said it would only take a day to try and only two witnesses needed to travel. So there is not, while there may be prejudice, it is very minor in the grand scheme of things. Okay, so let me take you to Moore Factor 2, which strikes me as a really big problem for you. Has your client ever, including now, contested Moore Factor 2, whether he alleges that he is actually innocent of these crimes? He has asserted to us that he has. Sorry, I don't mean that he said things to his lawyers. Has he in any statement ever to the district court or this court claimed that he is actually innocent of these crimes? No, he has not. And haven't we said that Moore Factor 2, I mean, you're trying to minimize the prejudice factor, in fairness, because we've said the prejudice factor is not super important, but we've said that Moore Factor 2 is super important, right? It is, but the court has also said that the validity of the guilty plea itself is the most important. And so if I could turn to that for a minute or two, I think it's very clear this was not a knowing and voluntarily intelligently entered plea. Wait, can we go before we get to that? Yes, sir. I will just say I'm deeply skeptic. So, I mean, I think there's an argument that this Rule 11 stuff is doubly forfeited, because I would say that the first thing, well, assuming you had a constitutionally effective counsel, and I know you don't agree he did, first I would say if you have an effective lawyer who thinks the district court is violating Rule 11, they have to object at the Rule 11 hearing, because if they don't, that's forfeited. You try to get around that by ISC, let's spot you, that gets you around that. But I have read the motion to withdraw the guilty plea. It doesn't say Rule 11 once. It doesn't say the district court screwed up once. It says my lawyer repeatedly screwed up, and I don't understand how that preserves an argument that the district court screwed up. Because the purpose of Rule 11 and the colloquy required by it is twofold, to ensure that as a constitutional matter defendants enter pleas that are knowing and voluntary, and second, that adherence to Rule 11 also includes ensuring. Sure, and I agree with all that, but all kinds of things operationalize other things. The entire Federal Rules of Civil Procedure operationalize the due process clause. That does not say that by raising, like, a procedural due process objection, you preserve every conceivable argument that the district court violated some provision of the Federal Rules of Civil Procedure because this Federal Rules of Civil Procedure implement the due process clause. That, I mean, what is your best authority for the proposition that you can say, my lawyer committed ineffective assistance of counsel, ergo, I've preserved the argument that the district court screwed up the plea colloquy? In our motion to withdraw the plea, there was a section very much that focused on the fact that the plea was not knowing and voluntary. Right, but again, the fact that the Rule 11 colloquy implements the due process clause doesn't mean that the argument that someone violated the due process clause means, like, it's just saying that one thing implements the other is not saying that they're not different arguments. And I guess what I'm asking is what is your best authority for, so I've expressed my tentative or more than tentative view, what is your best authority for the proposition that I'm wrong about that? I'm not sure how to answer that, Your Honor. I don't have anything at my fingertips. Okay. But I do think that looking at the plea colloquy as a whole, that the number of things that were either omitted. But that's an argument that the district court violated Rule 11, not that you preserved an argument that the district court violated Rule 11. Well, which is why I raised that argument first in the briefing, because it is key not only as an argument in and unto itself, but it is also the primary factor in the motion to withdraw. No, I mean, I understand what you just said about there were some omissions here in the plea colloquy, there's no question. And we often get, there's such a long checklist, we often get the district court is often zinged on appeal by saying, and legitimately, so you should have mentioned this, you should have mentioned that, you should have mentioned this. The district court mentioned a good deal. Also, there were omissions. And so you have Rule 11H, which says immaterial omissions and everything shall be disregarded. It's a harmless error rule in the federal rules there. And then doesn't Rule 11H hook into the reasonable probability standard? And this is what I think Judge Thacker alluded to earlier. What reasonable probability is there that he would not have pleaded guilty? Because if there's no reasonable probability there, then substantial rights have not been affected. And given the fact that he was given a pretty good deal with 23 of 24 charges being dismissed, and given the fact that the evidence against him was pretty strong, I mean, his wife advised him about these trial exhibits and there was all sorts of inconsistencies. And there were other witnesses who were going to testify that the addresses that Mr. Smith listed in an effort to secure the firearm, he never lived there. He listed these addresses and he didn't live there. So given the fact that the plea agreement was a good deal, and the fact that the addresses that he listed on his firearms form, a number of them, didn't exist, he never lived there. So why should we conclude that there was a reasonable probability that he would not have pled guilty? It was a perfectly rational decision that he made. It was straightforward. It was the product of a rational calculation. How could we conclude that there's a reasonable probability that he would not have pled guilty? I don't understand how we take that step. Two points, Your Honor. First, he testified that the only reason he pled guilty was because his lawyer said he wasn't prepared to go to trial. And related to that, a defendant could go to trial for any number of reasons, and simply to make the government prove its case whether or not he has a defense. Second, I take issue with the Court's seeming position that this was a really good deal. He could have pled straight up and gotten exactly the same sentence, other than he would have had to pay far more in terms of special assessments. That's it. He could have pled straight up, but going to what you estimate his sentence would have been had he gone to trial? A lot longer, right? Well, not necessarily. He did receive a downward variance. And, yes, the guideline range would have been higher, but I think that there also would have been arguments that he still should receive a sentence as low as he did. But apart from the length of the sentence, and I hear your point in that regard, isn't it still to the advantage of a particular defendant to have the charges dismissed? In other words, if 23 of 24 charges are dismissed, that makes for a cleaner situation. It takes some of the burden off of the petitioner's back, and it may, if the plea agreement dismisses those, that may have some effect on the calculation of the guidelines range, or if not, it may have some effect on the point within the guidelines range that the district court selected. It might have some effect later on in terms of the way the Bureau of Prisons looks at his record. In other words, wouldn't it still be significantly advantageous to have 23 of the 24 charges dismissed? Again, Your Honor, first, I see my time is up, so if I could answer your question.  The significant difference in going to trial versus pleading would be whether or not he received two or three points for acceptance of responsibility. In terms of relevant conduct, all of the guns in the other charges still came in as relevant conduct, and that's really what that drove the guideline range. He received, I think, a fairly large bump for that. So the fact, whether he pled to those charges, even in a straight-up plea, or pled only to the single plea, the single count, that didn't change. But what about the acceptance of responsibility and the three-point reduction that one gets from pleading guilty? Wouldn't that factor? Depending on the case, yes, it can be a major factor, but in other cases, it doesn't make that much difference. So I'll reserve the remainder of my time for rebuttal. Thank you. Mr. Durham. Good morning. May it please the Court, Nicholas Durham on behalf of the government. Your Honors, I want to respond first to one of the questions that was asked of my colleague, and it was about what was the best evidence of the ineffectiveness. What's the best evidence that but for the ineffectiveness, this defendant would have gone to trial? And there was a statement about how he testified that he did this because his counsel was not prepared. But what we see is that the district court expressly disavowed that, expressly found the opposite. The district court stated in its findings that this case was prepared and that this particular counsel was competent. So if that's their best evidence, we still have the district court finding in some ways the opposite. What did the district court base that on, that this counsel was competent? I mean, the counsel was in disbarment proceedings while this was going on and has been disbarred in at least three jurisdictions, maybe more to come. My understanding is he's only been disbarred in the District of Columbia, but still. No, Maryland and Virginia as well, since he was disbarred in D.C. I think he was suspended, but I do take your point. Do we really want to spend your argument time having a debate about just how bad of a lawyer this guy was? No. And to be clear, the government's not here to say that this counsel did not make any mistakes or was the best counsel that there could have been. When you really can't say what, I mean, he, appellant said that his lawyer told him he was not prepared to go to trial, and that's why he went to trial. I mean, the government can't, the government wasn't there that, the government can't discount what appellant said was accurate, that that's what his attorney told him, can it? The government can't necessarily disprove that that statement was made, but it can, and it has, I believe, disproved the overall context that the case was, in fact, prepared to go forward. That who was prepared to go forward, the government? The defense counsel. Based on what? Based on, I would say, a few things, Your Honor. One, the record in terms of what was being filed leading up to trial, the exhibits, jury instructions and whatnot, but then also in. Didn't the counsel make a motion to continue saying, oh, that he needed time to read all this voluminous discovery that had been turned over when that wasn't true at all? The government said that wasn't accurate. That there hadn't been new discovery provided. Because surely the government would not have provided discovery at that late date. There was discovery provided at that late date, Your Honor. Well, what did the government say in response to that motion to continue? What the government was saying is the type of discovery that was provided at that date isn't of the kind that would require any type of delay. For a competent attorney. It wasn't the type of discovery that was really that material to the trial itself, and it's not the type that would necessitate any kind of delay. It's just interesting to me that you would start with sort of trying to defend the competence of this lawyer rather than just go straight to the bottom line, which it did not substantially impact or prejudice appellant what happened here because of the plea deal that he got, and there's no evidence that he would have withdrawn it otherwise. And I do take your point, Your Honor, and again, I'm not here to necessarily defend this attorney's conduct, but what I do think is important is that the court, the district court, in this motion, heard plenty of evidence about what this particular attorney was doing to prepare for trial, to prepare this defendant for the plea agreement, and ultimately found as one of many of the factors, as one of various of the more factors, that this particular counsel was actually competent. But I also agree that even if we were to assume that he was incompetent, we don't have the prejudice prong established, which would be part of the burden of the defendants to prove. And if I may, I'm going to turn now to the Rule 11 colloquy. And, of course, Your Honor, the government, of course, is going to acknowledge that it was a briefer colloquy than many. So I know that we've said this. I guess, can I just ask you, why is it so freaking hard for a district court to just have a checklist and cite all the rules? I see Rule 11 colloquy after Rule 11 colloquy after Rule 11 colloquy, where district courts fail to tell defendants things they are under Rule 11 and maybe the due process. Like, it's not that freaking hard to have a checklist and follow the checklist. I would not disagree with Your Honor. There are district judges who are perfectly capable of doing it, who do it in every case. But we see Rule 11, and it's partly our fault because we've said it's totally okay to just not do the things that Rule 11 says you're supposed to do. Well, we haven't said that in every case. We sometimes say that, right. We recently said it is not okay. Your Honor, I would agree. Would it be a best practice? Absolutely. But I think the importance here is looking to the experience of this district court, this district court. No, I don't have any doubt that the district court judge is totally aware of all of these things. Of course, the district, I mean, any district court judge, but particularly this district court judge, who's extraordinarily experienced. But the point of it isn't for the district court judge to prove, to show to us, not that they ever need to show us anything, that the district court judge is aware of all of these things. The whole point of this is to make sure that the person who was about to confess guilt to a serious crime is aware of these things. So I don't see how the experience helps you, right. I actually think there's an argument that experienced district court judges are somewhat more likely to do this problem, which is because you know something and because you've said something a thousand times, you assume that everyone knows something and you don't need to say all those things. So, Your Honor, I think what's important here is, of course, as you have noted, the Fourth Circuit has stated that it has refused to enforce or require a script. It has refused to demand certain questions be asked. It's just a little weird to say saying the things that the rules require you to say is, oh, God, we're not going to require you to have a script. I mean, like the rules say you have to tell the defendant these things. You're right, Your Honor, and I think by and large this district court judge complied with Rule 11, or at least there was no reversible error. So it seems that there are two things you could do that might not be the best thing for you to do. One, you could try to mount a defense of the plea colloquy, which is a bit difficult to do. Judge Hyten points out that she's got a checklist and it shouldn't be that hard. And you would concede that this is not a model plea colloquy. And the other thing you can do is you can try to defend this lawyer. And I think what we're suggesting to you is that you don't really want to mount a strong defense of the plea colloquy or of the attorney's conduct. At the end of the day, there is Rule 11H, and there is the reasonable probability standard. And the question is, did the individual carry his burden to say that there was no reasonable probability that he would not have pled guilty? And isn't that a fair way to approach it? You're not interested in defending this plea colloquy, are you? Well, Your Honor, of course the government acknowledges that there are some errors in this plea colloquy, just not reversible error. But as Your Honor is suggesting, yes, going to the harm element in this analysis, what the government would say is that this defendant has proven no harm and that any one of these particular errors, if they were to be errors, that there's a reasonable probability. You know, the Supreme Court, it's under an abusive discretion standard, and the Supreme Court has said in the interest of finality and others that the reasonable probability is a high bar to clear. And at the end of the day, he still has to prove there was a reasonable probability he would not have pled guilty. And your argument has to be that, you know, we're not here to defend the conduct of counsel. We're not here to pull up this plea colloquy as any kind of model, because they just aren't. But there's still the problem of the delay. There's still the problem of the government's prejudice. There's still the problem of the fact that the witnesses were prepared to testify that the addresses he listed were simply not places that he had ever lived. The testimony would have, as forecast, would have blown him out of the water. He got a pretty good deal with 23 of the 24 charges dismissed. So that's the argument. The argument is not that the plea colloquy was fine, or the argument is not that this lawyer's conduct is defensible. But the case still, your argument has to be that the case still has not been made that there was a reasonable probability that he would not have pled guilty. Isn't that the argument? Yes, Your Honor. The government, yes, Your Honor, and exactly that. Even had there been a few questions about competency, even had there been a greater explanation of the sentencing guidelines in this case, and even had there been a fulsome explanation of the appellate waiver, there's absolutely no evidence that that would have led this particular defendant to all of a sudden decide that he's not going to plead guilty. At the end of the day, while they were, especially the appellate waiver, we do concede that was an error. There's no evidence linking any error to a harm, meaning it ultimately had no difference on this particular defendant. I mean, you're lucky here because you have an explicit harmless error rule that is directed by the federal rules toward this particular subject. This is not one of the general harmless error rules. It is specific, 11H, to this particular situation. And just to add on to that, because I think it was raised with my colleague, the government is asserting that here in this particular circumstance that the plain error standard applies actually in reviewing the Rule 11. It's not plain error exactly. It's a question of just reasonable probability that he would not have pled guilty, and that does tie into the third prong of Alano. And the rest, but it's not a classic plain error situation, I don't think. But it does suggest, to the extent that it relates to plain error, it does suggest that a motion to withdraw a plea should be made sooner rather than later. And there was, under Al Nicholson in more cases, the delay here was longer than you might wish. And yes, Your Honor, just in terms of, firstly, just in terms of the standard of review, the government would point to Edgberton, which is an unpublished decision, to be sure. But in that case, it was similar in that the defendant was contesting at the district court level the competence of his counsel but never challenged the Rule 11 colloquy. And this circuit decided that plain error would apply because there was no challenge before the district court as to the colloquy, even though at a district court level there was a challenge to competence. Now, in terms of the delay, we have asserted that there was a delay. But I think another key point is several of the allegations, and this goes to the credibility and the weight, but several of the allegations of the defendant, there was an incredible delay with that as well. And what I'm getting at is, for instance, the allegation that his counsel told him just to say yes to everything. One thing I'm interested in hearing, Ms. Pratt suggested that the fact that 23 of the 24 charges were dismissed in the plea agreement really didn't confer much of a substantial or tangible benefit. What do you say in response to that? Well, Your Honor, firstly, in terms of there was a benefit, to be sure. First, there's the third point. What do you say? What is the benefit? Because we have this all the time that one of the components of a plea agreement is the dismissal of certain charges. And then the question is, well, did that really factor into the ultimate sentence? And what is the tangible benefit that a defendant gets from the dismissal of charges? And I'm going to come to this point, but firstly, the third point would not have been at play had there not been a plea agreement. The third point rests with the discretion of the government to move for that. I would say also in terms of dismissing those counts, oftentimes there's a grouping question, whether or not those counts are going to group, and if so, would that add to the time and then add to the guidelines that the particular defendant is facing. And then lastly, it also relates to the Statement of Facts. I apologize for misstating that. As part of the process of developing this plea agreement, there is the Statement of Facts that the government puts forward and negotiates with the particular defendant. Had a defendant come forward and just said his own Statement of Facts, of course it would have to meet the elements, but it's not clear necessarily that the probation office or the court would ultimately give him even the two points for acceptance of responsibility, depending on how a defendant chose to provide his own explanation. A point that Judge Hyten has raised earlier, and it's always a good thing to ask, is there any plausible case that can be made that this individual was actually innocent of the false statements, charges that were leveled against him? Because what you don't want to happen is somebody pleading, making a plea, and then only later to find that there was no factual basis for the plea and that there was actual innocence. Is there any, and I think this is crucial in terms of the reasonable probability standard, is there any plausible case that can be made that this individual was actually innocent? And, Your Honor, that would be no. Our, my, you know, the appellant has admitted that, and that was, of course, a big consideration, both for the government in the first instance in deciding whether to challenge a motion to withdraw, but then that was a key consideration, as Your Honors have seen, in the district court's determination to ultimately deny that motion. So that at no point was an actual credible allegation of innocence was brought forward was one of the most determinative considerations for the district court in when he decided to deny the motion to withdraw. Now, just a few more points. One of the things I was getting at very briefly about the delay is Your Honor didn't ask about, you know, how important is the delay. And I think it's just key that some of the allegations this defendant made were made in March or in April, like on the eve of the evidentiary hearing. And that was, for instance, that the, that counsel told him to say yes to everything and also that he was going to get a misdemeanor and probation. So I think the court also has to look at, and this district court did, I would say, consider the delay in the allegations themselves. Why were they coming up so late if he knew, this defendant knew, all of these things from the first instance? Because what he didn't know was just how incompetent his counsel was and that his counsel was in the process of being disbarred because his counsel kept that from him. And appellant was, wasn't he in prison at this time? So he had to unwind just how bad all of this was and all of the misstatements and lies that his counsel had told him. I mean, did the government know that the lawyer was in disbarment proceedings when you were preparing to go to trial with him? No, Your Honor. We did find out later when this came up. Right, and so did appellant. Yes, Your Honor. It took him a while to unwind all of this. But I would say. So I take your point about the delay. I think delay is a factor we need to consider. But I blame it on sort of the appellant here not complaining about his lawyer soon enough. I don't agree with that. But you have a lot of other good points. But all I would say, Your Honor, to that point is that these issues he would have known at the time of the plea and they weren't raised, the idea that he was essentially told just to say yes to everything. Well, I mean, I'm sure you've done a lot of plea hearings, as have I. Ordinarily, the client does just say yes to everything. So I don't think that's an unusual thing. But anyway, I take your point. Thank you, Your Honor. But if they're seeing that my time is essentially up, if there are no more questions, then, of course, the government would ask that this court affirm. Judge Thacker, do you have further questions? I'm good. Okay. All right. Thank you. Ms. Pratt, you have some rebuttal time. Thank you, Your Honors. Let me start with the delay in terms of allegations and what Mr. Smith knew. You have to keep in mind he had practically no experience with the criminal justice system. He had a prior conviction that was later set aside 30 years earlier when he was only 18. So he doesn't know how things are supposed to work. And he's finding all this out after the fact. And he started raising it. Second, in terms of the benefit of pleadings, as I mentioned earlier, because of the way the guidelines work, dismissed counts still count. The government, I have seen many cases in which the government has moved for a third point for acceptance of responsibility, even without a plea agreement when it's a straight-up plea, in terms of a defendant providing his own statement of facts, all he has to admit to is the conduct underlying the particular count of conviction. So I think all of that highlights the importance of the district court's failure to explain how the sentencing guidelines work. In terms of the harm or, you know, that Mr. Smith had never indicated that he wanted to go to trial again at page 224 of the Joint Appendix, he was very clear he wanted to go to trial. In terms of the sufficiency of the colloquy, Judge Hytens, I think you hit the nail on the head. I mean, at best, what this judge did was just use a checklist. There was no explanation of anything. He just, to me, used a checklist and then left a bunch of the things off that should have been on the checklist. That and also, even with what he did explain, I won't even say explain. He did not do the kind of job that every other judge in the Eastern District of Virginia does to ensure that the plea was knowing and voluntary. And then, finally, in terms of the- This business about he wanted to go to trial, that could be raised in any motion to withdraw, could it not? I mean, if we credited that, that would be a standard element of any motion to withdraw, isn't it? Wouldn't it? That's always the choice. It is a choice, but it has to be a knowing and intelligently reached choice. And here, I think this court just cannot have confidence that this was a knowing and voluntary plea. But if he had wanted to go to trial, would that have been so hard to say, no? I mean, I want a trial. Not when his lawyer is telling him, just say yes to everything. And, in fact, when it came to the question of legal innocence, which the court did ask him, he said yes. He did, you know, I think because of the way the question was framed. And I apologize, I don't have it directly at my fingertips. But it was clear that was an answer to which that he should have said no right off. But he followed his lawyer's erroneous instructions and said yes to everything. And then finally, in terms of the best evidence of ineffectiveness, the government didn't put on the prior attorney. So the only evidence we have is what was coming through the defense witnesses, and I think that makes pretty clear that this lawyer was not doing what he was supposed to do. If the court has no further questions, we ask that the court vacate Mr. Smith's conviction and remand the case for further proceedings. Thank you. We thank you. Judge Thacker, did you have any questions? No. I do not. Ms. Pratt, I'd like you, if you would please, to stay by the microphone. I recognize that this is your final argument? That is correct, Your Honor. And that you have spent thirty years with the Federal Defender's Services? That is also correct. And you've appeared before me and others on many occasions. Yes. Your advocacy has invariably been well-informed, professional, courteous, also vigorous, energetic, and hard-hitting. And you have made the criminal justice system work ever so much better because of your efforts. And every member of our court, we are only three, but every member of our court would like to express to you the contributions that you've made to our process. And I hope that it will always be a source of the greatest satisfaction, the contributions that you've made to our criminal justice system. And with that, I want to turn over the microphone to my dear colleague and friend, Judge Thacker, because I believe she may have some remarks to make to you as well. Well, of course, I concur in everything that Judge Wilkinson said, and I just want to add my thanks as well for your very able and zealous representation of your clients over these thirty years. It's so important and continues to be so more and more every day. Thank you. Thank you, Your Honor. The only thing I'll add is, you know, I've only been on this court for the very tail end of your work in this court, but I am so glad to have been here for a very small part of it. And with that, I echo everything my colleagues say. Thank you, Judge Heidenstein. Now, with that, we will come down and shake hands or fist bumps, and I want you to know we wish you all good things. Thank you, Your Honor. Can I get a transcript of this? It's recorded. Well, is it still recorded? Thank you. Thank you for not pulling the plug so quickly. I appreciate that ever so much. I know it has been a ride. There have been times that some of my representation has been very difficult, you know, and appearing in front of this court at times has been difficult, but I just feel so blessed to have been able to spend my professional life doing this kind of work. So thank you for recognizing that. It means a great deal. You take care, okay? Thank you. Well, perhaps we'll see each other in a non-adversary setting at some point. Well, I certainly hope that will be the case. Thank you. It would be my pleasure. And we can talk more about cats and other cats. Exactly. Thanks, Judge. Thank you. I haven't had a chance to hear from you in a long time. Thank you. I hadn't tracked this. Chuck, hold the mic. Okay. Thank you. That's what my record suggested was. Yes. Well, I'm glad to have your beautiful voice. Thank you. Thank you. Thank you.
judges: J. Harvie Wilkinson III, Stephanie D. Thacker, Toby J. Heytens